## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARIO ACOSTA,

      Petitioner,

v.                                         No. CV 19-352 RB/CG

DANIEL PETERS, et al.,

      Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Mario Acosta's *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* (the "Petition"), (Doc. 1), filed April 16, 2019; Mr. Acosta's *Supplement* to the Petition (the "Supplement"), (Doc. 4), filed April 30, 2019; Respondents' *Answer to Mario Acosta's Pro Se Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 1]* (the "Original Response"), (Doc. 14), filed June 26, 2020; and Respondents' *Answer Addressing the Merits of Mario Acosta's First Ground For Relief, As Set Forth in His Pro Se Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 1]* (the "Response"), (Doc. 19), filed September 8, 2020. This matter was assigned to Chief United States Magistrate Judge Carmen E. Garza on April 17, 2019. (Doc. 2). Thereafter, on June 2, 2020, Senior United States District Judge Robert C. Brack referred this case to the undersigned to perform legal analysis and recommend an ultimate disposition. (Doc. 10).

After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that the Petition, (Doc. 1), be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

## I.    Factual Background

On May 3, 2015, Mario Acosta was involved in the unlawful taking of a vehicle belonging to Glyn Faulkner. (Doc. 19-1 at 1, 33). That day, City of Hobbs police officers responded to Mr. Faulkner's report of a stolen vehicle. *Id.* at 33, 63. Mr. Faulkner informed the police that his phone company had tracked the location of his phone, which he had left in his truck. *Id.* at 63. Officers responded to the location Mr. Faulkner had provided and when they arrived, they found the truck in question parked in front of Ana Navarette's residence. *Id.* Ms. Navarette told the officers that Mr. Acosta had attempted to sell her Mr. Faulkner's truck, and Mr. Acosta, who was in Ms. Navarette's backyard at the time, admitted to the officers that he had brought the vehicle. *Id.* at 64.

Officers arrested Mr. Acosta, transported him to the police station, and placed him in an interview room with audio and video recording. *Id.* at 3, 33. Mr. Acosta then signed an Advice of Rights Waiver form, waiving his rights under *Miranda v. Arizona*, and spoke to officers. *Id.* at 33. Videotape evidence showed that, during the interview, the interviewing officer, Detective White, asked Mr. Acosta twice if he was intoxicated. *Id.* at 64. Mr. Acosta ultimately confessed to taking Mr. Faulkner's vehicle, and was subsequently charged with felony unlawful taking of a motor vehicle. *Id.* at 1, 64.

## II.    Procedural Posture

On August 9, 2016, in the Fifth Judicial District Court in Lea County (the "state trial court"), Mr. Acosta filed a motion to suppress the statements he made during his custodial interview at the police station, arguing that his *Miranda* waiver was not knowing, voluntary, and intelligent at the time of his interview, given his recent drug use and mental illness. (Doc. 19-1 at 3-4). On August 11, 2016, the state trial court denied

the motion. *Id.* at 5. At trial, the jury found Mr. Acosta guilty of the unlawful taking of a motor vehicle. *Id.* at 1. The state trial court sentenced Mr. Acosta to eighteen months with a habitual-offender enhancement of eight years, for a total term of nine and a half years. *Id.* at 1.

Mr. Acosta appealed to the New Mexico Court of Appeals (the "court of appeals"), arguing the state trial court erred in denying his motion to suppress his statement in violation of *Miranda v. Arizona* because "there was a question about his mental state" at the time of his interview. *Id.* at 32. The court of appeals affirmed Mr. Acosta's conviction, concluding that he "failed to provide any evidence to support a conclusion that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights." *Id.* at 49, 60.

Mr. Acosta petitioned the New Mexico Supreme Court (the "state supreme court") for a writ of certiorari, challenging the court of appeals' decision. *Id.* 69. The state supreme court denied Mr. Acosta's petition for certiorari, thereby affirming Mr. Acosta's conviction. *Id.* at 76. Mr. Acosta then filed this 28 U.S.C. § 2254 petition ("Petition" or "§ 2254 petition"). (Doc. 1). Mr. Acosta now appears before this Court *pro se. Id.*

### III.    Mr. Acosta's Section 2254 Claim

In the instant case, Mr. Acosta seeks relief from conviction pursuant to 28 U.S.C. § 2254 on the ground that his *Miranda* waiver was not voluntarily, knowingly, and intelligently given, and that his confession was thus improperly admitted by the state trial court. (Doc. 1).  Mr. Acosta also initially presented three additional grounds for relief in his § 2254 petition, which he had not exhausted in state court. *Id.* at 7-10. Thereafter, he moved to dismiss grounds two, three and four with prejudice, which the Court

3

granted. (Doc. 15); (Doc. 18). Mr. Acosta's sole remaining ground is his *Miranda*-based claim. (Doc. 1 at 5).

A *pro se* litigant's pleadings are to be liberally construed. *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, *pro se* litigants are held to "less stringent standards" than those expected of lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* litigant's pleadings are to be judged by the same legal standards that apply to all litigants, and he must still abide by the applicable rules of court. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). In addition, a court cannot "assume the role of advocate" for the litigant, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), nor is it required to fashion his arguments for him "where his allegations are merely conclusory in nature and without supporting factual averments," *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

This Court will therefore broadly construe Mr. Acosta's remaining claim to include all of the *Miranda*-based arguments he made in the state court proceedings. Mr. Acosta thus argues the following in support of his *Miranda*-based claim: (1) his *Miranda* waiver took place during an impermissible "question first" custodial interview; (2) his waiver was not voluntary; and (3) his waiver was not knowing and intelligent. (Doc. 19-1 at 56); (Doc. 1).

4

In response, Respondents maintain that the state courts properly found Mr. Acosta's *Miranda* waiver to be voluntary, intelligent, and knowing. (Doc. 19 at 8-9). Respondents maintain that because there was no act of coercion on the part of Detective White, Mr. Acosta's waiver was constitutionally permissible, and Mr. Acosta is therefore not entitled to relief under 28 U.S.C. § 2254. *Id.*

Mr. Acosta included in his *Supplement* to the Petition a decision from the Social Security Administration ("SSA"), dated July 8, 2013, finding that he suffers from major depressive disorder ("recurrent, severe with psychotic features"), a history of traumatic brain injury, and a cognitive disorder. (Doc. 4 at 8). Although this Court is required to construe Mr. Acosta's pleadings liberally, the standard of review for this habeas Petition is not *de novo* but instead highly deferential to the state court decision. The Court will therefore not consider this SSA determination as it is absent from the state record. (Doc. 19-1).

## IV.    Exhaustion of State Court Remedies

Before discussing the merits of Mr. Acosta's claims, the Court must address the threshold issue of exhaustion. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) (requiring an individual to present his claims to the state courts before presenting them for federal court review). As discussed in a prior order, Mr. Acosta has met the exhaustion requirement for his remaining ground. (Doc. 16). Respondents do not dispute that Mr. Acosta has exhausted available state court remedies as to his remaining *Miranda*-based claim, and concede that the claim may be evaluated on its merits. (Doc. 14 at 5).

5

## V.    Analysis

Mr. Acosta filed his Petition after April 24, 1996, and thus the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review. Under 28

U.S.C. § 2254, a person in state custody may petition a federal court for relief on the

ground that he is in custody in violation of the United States Constitution or laws.

§ 2254(a). A petition under § 2254 may not be granted unless the state court judgment

(1) resulted in a decision contrary to or involved an unreasonable application of clearly

established federal law, as determined by the United States Supreme Court; or (2)

resulted in a decision based on an unreasonable determination of the facts in light of the

evidence presented. §§ 2254(d)(1)-(2). Factual findings are presumed correct and the

petitioner has the burden of rebutting that presumption by clear and convincing

evidence. § 2254(e)(1).

A state court decision is "contrary to" clearly established law if it either (1)

"applies a rule that contradicts the governing law set forth" in Supreme Court cases, or

(2) "confronts a set of facts that are materially indistinguishable" from a Supreme Court

decision and "nevertheless arrives at a result different from" the Supreme Court

decision. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court

decision constitutes an "unreasonable application" of federal law when a state

"unreasonably applies" Supreme Court precedent "to the facts of a prisoner's case." *Id.*

at 409. The state court decision must be more than incorrect or erroneous. *Renico v.*

*Lett*, 559 U.S. 766, 773 (2010). Rather, the application "must be 'objectively

unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). This imposes a highly

6

deferential standard of review, and state court decisions must be given the benefit of the doubt. *Id.*

Federal law regarding the waiver of one's Fifth Amendment privilege against self-incrimination requires that the individual "voluntarily, knowingly, and intelligently" waive his constitutional privilege. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). The Supreme Court has said that a *Miranda* waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421 (1986). A *Miranda* waiver must also be knowing and intelligent, meaning it must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Colorado v. Spring*, 479 U.S. 564, 573 (1987). This Court's review of the state court decisions holding that Mr. Acosta's *Miranda* waiver was voluntary, knowing and intelligent is limited to whether that determination was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

     *i.*   *Argument one: "question first" custodial interview*

Mr. Acosta first argues that he was confused by the *Miranda* warning at the police station because earlier in the day the interviewing officer had already asked him whether he brought the truck to Ms. Navarette's house and Mr. Acosta had answered in the affirmative. (Doc. 19-1 at 56). His appeal brief cites *Missouri v. Seibert*, 542 U.S. 600 (2004), for the proposition that a *Miranda* warning in the aftermath of a confession is unconvincing and constitutionally defective, and may tend to bewilder the average

suspect. (Doc. 19-1 at 56). Respondents address this issue briefly, stating only that the court of appeals was unconvinced that Mr. Acosta's *Miranda* waiver was not voluntary, knowing, and intelligent. (Doc. 19 at 8).

In fact, law enforcement has relied upon "question first" tactics in the past to an extent that disturbed the Supreme Court:

> Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for knowledgeable decision. What is worse, telling a suspect that "anything you say can and will be used against you," without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail.

*Seibert*, 542 U.S. at 613. This Court finds, however, that the instant case is distinguishable from *Missouri v. Seibert* in several respects, and is more similar to *Oregon v. Elstad*, 470 U.S. 298 (1985), in which the Court upheld the waiver.

In *Missouri v. Seibert*, the Court addressed a systemic police technique of "interrogating in successive, unwarned and warned phases." 542 U.S. at 609. The interviewing officer in *Missouri v. Seibert* questioned the defendant for thirty to forty minutes, obtained a confession, and then gave the defendant a break before returning to give her a *Miranda* warning and to obtain her signed waiver. *Id.* at 605. The officer next resumed his questioning and confronted the defendant with her pre-*Miranda* statements, prompting her to repeat her pre-*Miranda* admissions. *Id.* The officer in *Missouri v. Seibert* testified that he had made a conscious decision to withhold the defendant's *Miranda* warnings, proceed with interviewing the defendant, and then give

the warnings and repeat the question until he obtained the answer previously given. *Id.* at 606. The Supreme Court ruled that this constituted a defective *Miranda* waiver. *Id.*

The facts in *Oregon v. Elstad* differ significantly. There, the interviewing officer spoke with the suspect in his own home, prior to arrest, where the suspect made an unwarned statement. *Elstad*, 470 U.S. at 301, 315. The Court noted that the brief conversation in the living room had "none of the earmarks of coercion," because the officer's pause in the living room was innocuous, and the officer did not intend to confuse the suspect; rather, the officer was, at the time, merely waiting for another accompanying officer to notify the suspect's mother of the reason for the arrest. *Id.* at 315-16. Accordingly, the Court in *Oregon v. Elstad* upheld a "question first" *Miranda* waiver where, as in the instant case, there was no admitted intent by the interviewing officer to confuse. *Id.*

The conversation in *Oregon v. Elstad* closely compares to the conversation police had with Mr. Acosta in Ms. Navarette's backyard. (Doc. 19-1 at 53). During that conversation, officers were present at Ms. Navarette's property because they were responding to information from Mr. Faulkner's phone company in an effort to locate his stolen car. *Id.* The later police station interview by Detective White, as in *Missouri v. Seibert*, "present[ed] a markedly different experience from the short conversation at home." *Seibert*, 542 U.S. at 615-16. In other words, "a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience," and therefore, in this case, "the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission." *Seibert*, 542 U.S. at 615-16. The question-first encounter at Ms. Navarette's home therefore

9

would likely not have confused a reasonable suspect about the new and distinct nature of Mr. Acosta's later interview at the police station. Because the Supreme Court has previously upheld a *Miranda* waiver under similar facts, the state court decisions cannot be found to be contrary to or unreasonable applications of clearly established federal law on this basis under the highly deferential standard of a § 2254 petition.

       ii.   *Argument two: voluntariness of* Miranda *waiver*

Mr. Acosta next argues that Detective White's failure to end the interview when he knew of Mr. Acosta's impaired mental state rendered Mr. Acosta's subsequent *Miranda* waiver involuntary. Mr. Acosta alleges that he suffered from a "black-out" on the day he was interviewed by Detective White, but he seems to mean that he was "blacked out" for the commission of the crime itself, not at the time of his *Miranda* waiver. (Doc. 1 at 16). He states, for instance, ". . . Detective White arrested me for [stealing] a vehicle and I told him I don't remember what happened." *Id.* Mr. Acosta also describes a generally unstable mental condition at around the time of his custodial interview in this case, including psychiatric hospitalization; he describes a history of alcohol-induced short-term memory loss as well, where he would wake up in jail without any memory of why he was there. *Id.*

Respondents contend that without a coercive act on the part of Detective White, Mr. Acosta cannot show that his statement was constitutionally inadequate. (Doc. 19 at 8). Respondents argue that there is nothing in the record to suggest that Detective White obtained Mr. Acosta's statement by coercion or improper inducement such that his will was overborne. *Id.*

10

The Tenth Circuit has held that "[a] statement is involuntary in violation of due process if 'a defendant's will was overborne by the circumstances surrounding' his confession." *United States v. Lamy*, 521 F.3d 1257, 1261 (10th Cir. 2008) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). While a defendant's mental condition is relevant to the voluntariness of a *Miranda* waiver in terms of the defendant's susceptibility to police coercion, it is not in and of itself sufficient to defeat the "voluntariness" of a *Miranda* waiver. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). The right protected under *Miranda* is emphatically *not* the right to confess to a crime "only when totally rational and properly motivated." *Id.* at 166.

The Supreme Court, in *Colorado v. Connelly*, explained that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164. The Tenth Circuit has recognized the *Colorado v. Connelly* principle that a finding of involuntariness requires some coercive act by law enforcement, whether the suspect is intoxicated or suffering mental illness. *See*, *e.g.*, *McGregor v. Gibson*, 219 F.3d 1245, 1254-55 (10th Cir. 2000), *on reh'g en banc*, 248 F.3d 946 (10th Cir. 2001) (noting that "mental illness, without any evidence of police coercion, is insufficient" to render petitioner's confession involuntary). This District has previously dealt specifically with the issue of "black-outs" or short-term memory loss, and ruled that this type of episode does not render a later *Miranda* waiver constitutionally invalid. *United States v. Martinez*, 1:2-CR-1055 JB, 2006 WL 4079686, at *3 (D.N.M. Nov. 21, 2006) (upholding *Miranda* waiver where defendant could not remember the night of the crime because he was "probably intoxicated").

11

Accordingly, coercive police activity is a "necessary predicate" to finding a confession involuntary, and, conversely, the voluntariness of a waiver depends upon an absence of police overreach rather than "free choice" in the broader sense. *Connelly*, 479 U.S. at 167, 170. Moreover, under the prevailing Tenth Circuit law, the mere act of interviewing a suspect is not a coercive one, because it is not misconduct. *Elliott v. Williams*, 248 F.3d 1205, 1213 (10th Cir. 2001) (denying a § 2254 claim as "in the absence of any misconduct" by the detective, state court's finding that petitioner was not deprived of due process was a reasonable application of federal law).

Here, while Mr. Acosta does allege that he suffers from recurrent major depressive disorder with psychotic features, this allegation is general; he does not allege any particular "black-out" or psychotic episode at the time of the *Miranda* waiver itself. (Doc. 1); (Doc. 4 at 8); (Doc. 19-1). Mr. Acosta's alleged "black-outs" thus do not defeat the voluntariness of his *Miranda* waiver. Additionally, Mr. Acosta's act of signing a waiver form prior to his confession, though not conclusive, is "strong proof" of the voluntariness of his waiver. (Doc. 19-1 at 33); *United States v. Fountain*, 776 F.2d 878, 886 (10th Cir. 1985) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

Further, Mr. Acosta fails to allege any acts of coercion by Detective White. Mr. Acosta alleges only that Detective White was aware of Mr. Acosta's mental state during the interview. (Doc. 1 at 5). Detective White's mere awareness of Mr. Acosta's mental state, however, does not render his decision to continue the interview an act of coercion, as it was not misconduct.

12

Therefore, regarding the issue of voluntariness, the state court decision cannot be found to be contrary to or an unreasonable application of clearly established federal law under the highly deferential standard of a § 2254 petition.

> iii.   _Argument three: knowing and intelligent_ Miranda _waiver_

Finally, Mr. Acosta argues that his waiver was not knowing and intelligent given his mental state at the time. Respondents conflate this inquiry with the voluntariness inquiry, citing _United States v. Smith,_ 606 F.3d 1270 (10th Cir. 2010), for the proposition that whether a suspect's _Miranda_ waiver is knowing and voluntary turns on the totality of the circumstances. (Doc. 19 at 7).

A _Miranda_ waiver is knowing if it is made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." _Colorado v. Spring_, 479 U.S. 564, 573 (1987). The level of awareness required for a suspect to knowingly waive his rights, however, does not require the suspect to know and understand "every possible consequence of a waiver of the Fifth Amendment privilege." _Id._ at 574.

The Tenth Circuit considers the totality of the circumstances in determining whether a suspect knowingly and intelligently waived his _Miranda_ rights. _United States v. Burson_, 531 F.3d 1254, 1256-57 (10th Cir. 2008). Under Tenth Circuit law, a suspect must be not merely intoxicated but "impaired to a substantial degree" by drugs to overcome his ability to knowingly and intelligently waive his Fifth Amendment rights under _Miranda. Id._ at 1258.

As the petitioner, Mr. Acosta bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). _See_, _e.g._, _Ryder ex_

*rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016). Mr. Acosta's allegations regarding his mental state are vague. For instance, he alleges he was suffering from mental illness generally, and that he was intoxicated at the time of the interview, but does not allege any particular hallucinations, delusions, or loss of consciousness at the time of the *Miranda* waiver itself. (Doc. 1). Mr. Acosta confessed to a specific crime, and he was able to do so with verifiable details. (Doc. 19-1 at 53). He was able to sign the Advice of Rights Waiver form the police provided him. *Id.* at 33. He does not allege that he lost lucidity at any time during his interview. (Doc. 19-1 at 3, 33, 53-4); (Doc. 1 at 5, 16-17). He does not allege unconsciousness, active psychosis or that he was coming in and out of lucidity during his interview, nor does the record reflect any odd exclamations indicating a complete break from reality on his part. *Id.*

Therefore, given Tenth Circuit law, the state court decision cannot be found to be contrary to or an unreasonable application of clearly established federal law under the highly deferential standard of a § 2254 petition. For these reasons, the Court recommends Mr. Acosta's remaining ground for relief be denied.

## VI. Conclusion

For the foregoing reasons, the Court finds that Mr. Acosta has not established that the state courts' decisions in this case were contrary to or unreasonable applications of clearly established federal law, or that they were based on unreasonable determinations of fact in light of the evidence presented. The Court therefore **RECOMMENDS** Mr. Acosta's *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody*, (Doc. 1), be **DENIED**; and that this case be **DISMISSED WITH PREJUDICE.**

The Court also finds that Mr. Acosta has failed to make a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c), and therefore **RECOMMENDS** that the Court **DECLINE** to issue a certificate of appealability.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE